

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

OLGA PELAYO,                          §
                                      §
          Plaintiff,                  §
                                      §
                                      §
v.                                    §        NO. EP-12-CV-440-MAT
                                      §
CAROLYN W. COLVIN,                    §
ACTING COMMISSIONER OF THE            §
SOCIAL SECURITY ADMINISTRATION,[1]    §
                                      §
          Defendant.                  §

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals

from the decision of the Commissioner of the Social Security Administration ("Commissioner")

denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the

merits before a United States Magistrate Judge, the case was transferred to this Court for trial and

entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the

Western District of Texas. For the reasons set forth below, the Commissioner's decision is

AFFIRMED.

### I. PROCEDURAL HISTORY

On October 29, 2009, Plaintiff filed an application for DIB in which she alleged disability

beginning August 3, 2008 due to shoulder, wrists, and back injuries; high blood pressure; and,

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration
on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure and the
last sentence of 42 U.S.C. § 405(g), she is substituted as the Defendant herein.

1

arthritis. (R. 10, 137, 141).[2]  Plaintiff was 47 years old on the alleged disability onset date. (R. 15, 137). She has a high school education (GED) and has previous work experience as a meat trimmer. (R. 15, 142, 147).

After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (R. 45-49, 53-58). On April 20, 2011, she appeared with her representative for a hearing. (R. 23-42). On May 31, 2011, the ALJ issued a written decision denying benefits on the ground that Plaintiff is able to perform work available in significant numbers in the national economy; therefore, she is not disabled. (R. 10-17). On August 31, 2012, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision. (R. 1-5).

## II. ISSUES PRESENTED

Plaintiff presents two issues for review: (1) whether the ALJ erred by failing to develop the record; and, (2) whether the ALJ erred by relying on the vocational expert's response to a faulty hypothetical question.

## III. DISCUSSION

### A. Standard of Review

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

---

[2] Reference to the record of administrative proceedings is designated by (R.[page number(s)]).

Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

In determining whether there is substantial evidence to support the findings of the Commissioner, the court must carefully examine the entire record, but may not reweigh the evidence or try the issues *de novo*. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). If the Commissioner applied the proper legal standards and her findings are supported by substantial evidence, they are conclusive and must be affirmed. *Id.*

B. Evaluation Process and Burden of Proof

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or equals the severity of an impairment listed in

20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment or combination of impairments prevents the claimant from performing past relevant work; and, (5) whether the impairment or combination of impairments prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Greenspan*, 38 F.3d at 236.

The claimant bears the burden of proof on the first four steps of the sequential analysis. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995). Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of opinion testimony of vocational experts or by use of administrative guidelines in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that she is unable to perform the alternative work. *Id.*

C. The ALJ's Decision

In her written decision, the ALJ determined as a threshold matter that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2013. (R. 12). At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 3, 2008. *Id.* At step two, the ALJ determined Plaintiff has severe impairments consisting of degenerative disc disease of the cervical and lumbar spines. *Id.* At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 12-13).

Before reaching step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found she is able to perform light work[3], except she can lift up to 8 pounds frequently and 15 pounds occasionally; must alternate sitting and standing approximately hourly; can only occasionally climb and balance; can stoop only to sit; and can perform only occasional overhead reaching. (R. 13). In making this RFC assessment, the ALJ determined Plaintiff's allegations regarding the intensity, persistence and limiting effects of her symptoms were not entirely credible. *Id.*

At step four, the ALJ found that Plaintiff is unable to perform any of her past relevant work. (R. 15). At step five, the ALJ found, considering Plaintiff's age, education, work experience, and RFC, that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. (R. 16). Thus, the ALJ concluded at step five that Plaintiff is not disabled. (R. 16-17).

D. Analysis of Plaintiff's Claim

### 1. ALJ Properly Developed the Record

Plaintiff contends the ALJ failed in his duty to develop the record to determine whether Plaintiff's combination of complaints limited her ability to engage in gainful employment. Specifically, Plaintiff argues the ALJ failed to address Plaintiff's impairments of "depression, headaches[4], lumbar spine complications, polyarthralgias and fibromyalgia syndrome, sleep apnea." Plaintiff further contends the ALJ should have recontacted Plaintiff's treating doctors with regard

---

[3] Light work is defined in the regulations as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

[4] Plaintiff's brief does not address any evidence of functional limitations related to headaches that the ALJ should have considered.

to her depression and should have ordered a consultative psychiatric examination. And, finally, Plaintiff asserts the ALJ improperly discredited the opinion of her treating physician, Dr. Zolfoghary.

RFC is defined as the most an individual can still do despite her limitations. 20 C.F.R. § 404.1545; Social Security Ruling ("SSR") 96-8p[5]. The responsibility to determine the claimant's RFC belongs to the ALJ. *Ripley*, 67 F.3d at 557. In making this determination, the ALJ must consider all the record evidence and determine Plaintiff's abilities despite her physical and mental limitations. 20 C.F.R. § 404.1545. The ALJ must consider the limiting effects of Plaintiff's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545; SSR 96-8p. The relative weight to be given to the evidence is within the ALJ's discretion. *See Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (citing *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988)). The ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

Plaintiff bears the burden to establish disability by providing or identifying medical and other evidence of her impairments. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(c); *see Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). There is no burden on the Commissioner to prove the absence of a claimant's alleged impairment. *See Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). It is clear that the claimant "must prove the existence of an impairment." *Randall v. Astrue*, 570 F.3d 651, 657-58 (5th Cir. 2009). Further, as pointed out in the Commissioner's brief, the ALJ considers the functional consequences of the claimant's impairments, not the diagnoses, in the

---

[5] SSR 96-8p, *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184 (July 2, 1996).

disability analysis. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

Plaintiff alleges the ALJ limited her analysis to Plaintiff's impairment of degenerative disc disease of the cervical and lumbar spines, and failed to consider her "lumbar spine complications." Plaintiff does not, however, identify the alleged "lumbar spine complications." With regard to her neck and back impairments, the ALJ correctly observed the following. Although Plaintiff alleged chronic, severe back and neck pain, objective findings on x-ray and MRI studies indicated that her condition had improved significantly since her injury in July 2008.[6] (R. 14). Following conservative treatment with physical therapy and pain medications, physical examination on October 26, 2009, revealed normal range of motion in both shoulders, and in the cervical and thoracolumbar spines. *Id.* Treatment notes from her physician, K. Zolfoghary, M.D., dated January 26, 2010, state that Plaintiff complained of severe cervical pain with pain radiating under the shoulder blades and to various body parts. (R. 486). Dr. Zolfoghary noted that, although an MRI showed she had a herniated disc in her cervical spine in 2008, a repeat MRI dated showed normal findings of the cervical spine. *Id.* Additionally, he noted there was evidence of a herniated disc in her lumbar spine in 2008, however, a repeat MRI in 2009 revealed a normal lumbar spine. *Id.* He strongly suggested she continue with conservative and symptomatic therapy due to her continued complaints of pain despite MRI findings that showed no evidence of disc herniation. *Id.*

As noted by the ALJ, a CT scan of the cervical spine performed on January 29, 2010 showed only very early degenerative changes of the mid-cervical spine, but "[o]therwise, negative CT examination of the cervical spine." (R. 14, 494). An MRI performed on September 22, 2010

---

[6] It appears from the record that Plaintiff suffered an on-the-job repetitive motion injury to her shoulders on April 19, 2005. (R. 29, 380). She injured her lower back at work on July 29, 2008. (R. 375, 380, 491, 652).

revealed disc dessication in the lower lumbar spine, but no disc bulges or protrusions, and no central canal or neuroforaminal narrowing. (R. 14, 725). The ALJ correctly concluded the most recent x-ray and MRI studies were all within normal limits. (R. 15). There is no error shown in the analysis.

Plaintiff contends the ALJ failed to develop the record by recontacting her treating doctors regarding her depression and by failing to order a consultative mental examination to determine whether she retains the mental RFC to perform the job of assembler. In support, Plaintiff relies on her testimony that depression affects her ability to work because she has problems thinking and remembering, wants to avoid people, and feels like she wants to cry. (R. 36). She also notes she takes medication to control her depression. Plaintiff also cites to the testimony of the vocational expert, in response to questioning from Plaintiff's representative, that the job of assembler requires the ability to focus and maintain persistence and pace 80 to 90 per cent of the time. (R. 40).

The ALJ has a basic obligation to develop a full and fair record to ensure that her decision is based on sufficient facts. *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). Whether to order a consultative examination is within the ALJ's discretion. *Anderson v. Sullivan*, 887 F.2d at 634. An examination at government expense is not required unless it is necessary to enable the ALJ to make a decision. *Id.* A court will not reverse for the ALJ's failure to develop the record unless the claimant can establish prejudice as a result of the failure. *Bowling v. Shalala*, 36 F.3d 431, 437 (5th Cir. 1994). Plaintiff can establish prejudice by showing that a consultative mental examination "could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Kane*, 731 F.2d at 1220).

The record shows Plaintiff was prescribed Cymbalta by Eugene Chester McDanald[7], M.D.,

---

[7] This unusual last name spelling appears to be correct. (R. 700-722).

a rheumatologist, on April 26, 2010, as part of the treatment plan for fibromyalgia syndrome (R. 35, 715, 718). A review of these records shows that, although Dr. McDanald noted Plaintiff's depressed mood at her first visit on April 12, 2010, at no time during the course of treatment did his assessments include a diagnosis of depression. (R. 720, 721-722, 718, 715, 712, 709, 706, 701). Further, the records show that within one month after adjusting the Cymbalta dosage, Plaintiff's depression was reported to be improving on May 24, 2010, and reportedly continued to improve at all subsequent visits according to notes dated July 26, 2010, August 10, 2010, September 9, 2010, and March 9, 2011. (R. 711, 714, 708, 700).

Importantly, it does not appear Plaintiff ever sought any treatment from a licensed psychiatrist or psychologist. Treatment notes from Dr. Carlos Remirez[8], a family medicine doctor, dated from January 22, 2009 to March 22, 2011 consistently show Plaintiff was oriented in all spheres with normal mood and affect. ( R. 667, 671, 676, 687, 692, 695). There is no mention of depression complaints by Plaintiff during this period and no diagnosis or treatment for depression.

Plaintiff did not allege depression as one of her impairments when she applied for benefits. (R. 141). Plaintiff does not suggest or point to any evidence in the record that suggests she requested her doctors be recontacted regarding her depression or that she requested a consultative mental examination. Although Plaintiff alleged depression as an impairment on April 5, 2011 in a letter brief to the ALJ, the summarized evidence in support of her claims does not mention depression or refer to any diagnosis or treatment for depression. Plaintiff has not established the requisite prejudice by showing that either recontacting her physicians or undergoing a consultative mental examination "could and would have adduced evidence that might have altered the result." *Brock*, 84 F.3d at 728

---

[8] This unusual last name spelling also appears to be correct. (R. 665-696).

(citing *Kane*, 731 F.2d at 1220).

Regarding her sleep apnea, Plaintiff does not point to any objective medical evidence of limitations related to this condition. She relies on her testimony, in response to the ALJ's question about her typical day, that she sometimes gets up as late as noon because she has sleep apnea. She testified that she takes medication for sleep apnea and also uses a machine, "but I still have problems." (R. 33). She did not elaborate further on how this condition interferes with her ability to work. The Court is not persuaded that Plaintiff's sleep apnea results in functional limitations beyond those found by the ALJ.

Regarding her fibromyalgia, Plaintiff relies on her testimony at the administrative hearing of acute pain from her neck down to her lower back, from her shoulders down to her arms, as well as pain in her knees, toes, and joints. (R. 35). This testimony was in response to the ALJ question regarding pain due to fibromyalgia. *Id.* The record shows that on March 15, 2010, Plaintiff was referred by her family medicine doctor for a rheumatology consult. (R. 682). As discussed earlier, on April 12, 2010, she was seen by rheumatologist Dr. McDanald. (R. 720-722). The assessment was fibromyalgia, unspecified myalgia or myositis; joint pain in multiple sites; and, insomnia, unspecified. (R. 721-722). Upon examination, Plaintiff had normal range of motion without tenderness in her cervical spine, shoulders, wrists, hands, hips, knees, ankles, and feet. (R. 720). She had some tenderness in her lumbar spine. *Id.* Fibromyalgia tender points were noted as follows: atlanto-occipital, trapezius, and gluteal.[9] *Id.*

---

[9] Social Security Ruling 12-2p provides guidance on the evaluation of fibromyalgia. SSR 12-2p, *Titles II and XVI: Evaluation of Fibromyalgia*, 2012 WL 3104869 (July 25, 2012). Although the effective date of this ruling is after the date of the ALJ's decision, it is helpful in understanding the evidence in this case. As part of the criteria for determining when fibromyalgia is established as a medically determinable impairment, SSR 12-2p requires tenderness on

Although during the course of her treatment, Dr. McDanald reported tender trigger points on examination, at no time did he document 11 of the 18 trigger points required to definitively establish a diagnosis of fibromyalgia under SSR 12-2p.  At follow up visits in May, July, August and September 2010, her trigger points were reported to be improving and minimal.  (R. 714, 712, 709, 706).  Upon examination on March 9, 2011, Dr. McDanald opined Plaintiff's bilateral gluteal and other trigger points were well controlled.  (R. 701).

Based on consideration of Plaintiff's combination of impairments, the ALJ found Plaintiff capable of work at the light exertional level with additional limitations of lifting no more than 8 pounds frequently and 15 pounds occasionally; must alternate sitting and standing approximately hourly; can only occasionally climb and balance; can stoop only to sit; and, can perform only occasional overhead reaching.[10]  (R. 13).  In making this RFC assessment, the ALJ considered Plaintiff's subjective complaints of pain and other symptoms.  The ALJ determined Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her pain and other symptoms were not entirely credible.  *Id.*  Assessment of credibility is the province of the ALJ, and her

---

physical examination in at least 11 of 18 sites located on each side of the body to include: occiput (base of skull); low cervical spine (back and side of the neck); trapezius muscle (shoulder); supraspinatus muscle (near the shoulder blade); second rib (top of the rib cage near the sternum or breast bone); lateral epicondyle (outer aspect of the elbow); gluteal (top of the buttock); greater trochanter (below the hip); and, inner aspect of the knee.  *Id.* at *3.

[10]  The ALJ's RFC assessment is supported by the overall evidence of record.  She noted a thorough functional capacity evaluation on April 14, 2009 indicated Plaintiff was capable of performing sedentary to light work demands with occasional lifting of up to 15 pounds and frequent lifting of up to 8 pounds.  (R. 14, 588-602).  Additionally, the ALJ properly considered the assessments of state agency medical consultants who reviewed the record and found Plaintiff could frequently lift/carry slightly less than 10 pounds and occasionally lift/carry 10 pounds, with only occasional overhead lifting, and could sit, stand and/or walk about 6 hours in a normal work day.  (R. 15, 453-460, 519).

credibility determination is entitled to great deference. *Greenspan*, 38 F.3d at 237; *Newton*, 209 F.3d at 459.   Plaintiff has not shown her fibromyalgia reduced her RFC below that determined by the ALJ.

Plaintiff is correct that the ALJ's written decision does not specifically mention or discuss depression, sleep apnea, or fibromyalgia.   But this alone is not reversible error.  The ALJ is not required to specifically discuss all the evidence that she considers.  *See, e.g., Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994).   Any procedural error made in the consideration of Plaintiff's impairments requires remand only when a reviewing court concludes that the error is not harmless. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).   "Procedural perfection in administrative proceedings is not required.  This court will not vacate a judgment unless the substantial rights of a party have been affected."  *Id.*  In this case, the evidence cited by Plaintiff fails to establish the ALJ improperly considered Plaintiff's impairments in assessing her RFC.

Finally, Plaintiff argues the ALJ "completely disregarded" the opinion of her treating physician, K. Zolfoghary, M.D., who opined in progress notes dated February 9, 2010, that Plaintiff "remains totally disabled for any type of gainful employment." (ECF No. 17 at 8, citing R. 556). In her opinion, the ALJ discussed the Medical Source Statement from Dr. Zolfoghary also dated February 9, 2010, which stated Plaintiff was capable of lifting/carrying less than 10 pounds frequently and occasionally standing/walking for less than two hours in an eight-hour workday, but did not indicate how long Plaintiff was capable of sitting.  (R. 14, 516-518).  The ALJ correctly noted that this opinion was "entitled to significant evidentiary weight if it is well supported by objective clinical findings and is not contrary to the opinions of other treating and examining physicians in the record." (R. 14).

"[O]rdinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan*, 38 F.3d at 237.   Medical opinions are given deference, however, only if those opinions are shown to be more than conclusory and are supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).   When good cause is shown, the ALJ may give less weight, little weight, or even no weight at all to any physician's opinion. *Greenspan*, 38 F.3d at 237 (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)).

The ALJ properly gave less weight to the opinion of Plaintiff's treating physician.   In her opinion, the ALJ noted that Dr. Zolfoghary's opinion was not supported by objective signs and findings and was inconsistent with his own treatment notes and records.   Specifically, the ALJ stated that while Dr. Zolfoghary noted Plaintiff had significant restrictions in standing, walking, and lifting and carrying, his treatment and progress notes did not indicate he had placed any limitations on Plaintiff's activities and did not mention any need to lie down and rest several times daily.   (R. 14-15).   As she is permitted to do, the ALJ discounted the opinion of Dr. Zolfoghary because it was inconsistent with other treatment records and not substantiated by objective medical evidence. *Greenspan*, 38 F.3d at 237; *see also* 20 C.F.R. §§ 404.1527(c)(2) (giving "controlling weight" to a treating physician's opinion only if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record). There is no error shown on this ground.

The objective medical evidence does not support Plaintiff's contention that the ALJ improperly consider her impairments in assessing her RFC. *See Anthony v. Sullivan*, 954 F.2d 289,

295 (5th Cir. 1992) (subjective complaints unsubstantiated by medical findings need not be credited over conflicting medical evidence). Simply stated, the evidence cited by Plaintiff does not support the need for further limitations in her RFC beyond those assessed by the ALJ.

### 2. No Error in the ALJ's Reliance on the Testimony of the Vocational Expert

Plaintiff claims the ALJ erred by relying on the testimony of the vocational expert ("VE") in response to a faulty hypothetical question. According to Plaintiff, the ALJ's question failed to incorporate Plaintiff's complaints of pain and medication side effects and her symptoms of depression, headaches, sleep apnea, and fibromyalgia.

The ALJ need only incorporate into the hypothetical question those limitations that are "supported by the evidence and recognized by the ALJ." *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002). The ALJ is not required to include in the hypothetical question any limitations that she did not find to be supported in the record. *Id.* Nor is the ALJ bound by VE testimony based on evidentiary assumptions that the ALJ ultimately rejects. *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985).

At the hearing, the ALJ asked the VE to assume a person of the same age, education and work history as the Plaintiff who can perform the requirements of light work, but can only lift 8 pounds frequently and 15 pounds occasionally; must alternate between sitting and standing approximately hourly; can stoop only to sit; and, can only occasionally perform overhead reaching. (R. 39). The ALJ asked the VE if there were jobs in the and regional and national economy that such a hypothetical person could perform. *Id.* In response, the VE testified that the additional limitation in lifting would reduce the number of jobs available, however, such a hypothetical person would be able to perform the job of assembler which is classified as unskilled work at the light exertional

level.

Plaintiff's representative was afforded an opportunity to cross-examine the VE. The representative asked the VE if the same hypothetical person with the additional limitation of ability to sit no more than two hours in a work day would be able to perform the job of assembler. (R. 39-40). The VE testified that, even with a two-hour sitting limitation, such a hypothetical person would be able to perform the job of assembler at the light exertional level. (R. 40). The representative then added the additional limitation of having to take unscheduled breaks, and asked the VE if that additional limitation would eliminate the light unskilled assembler job, and the VE testified that it would because unscheduled breaks are not allowed in gainful employment. *Id.* Finally, the representative asked the VE whether the light unskilled assembler job could be performed if the hypothetical individual's ability to maintain concentration, persistence, and pace was "affected one third of the day." *Id.* The VE opined that such a mental limitation would eliminate that job. *Id.* As the ALJ did not find the need to take unscheduled breaks or the limitations in concentration, persistence, and pace to be supported in the record, she was not bound by this testimony. *Owens*, 770 F.2d at 1282.

As discussed in the previous section, the ALJ properly considered all of Plaintiff's medically determinable impairments in determining Plaintiff's RFC. Her hypothetical question to the VE included all the limitations supported by the evidence, and Plaintiff's representative had an opportunity to correct any perceived defects in the hypothetical question. Therefore, the VE's testimony in response to the ALJ's hypothetical provided substantial evidence in support of the ALJ's step five decision. *See Bowling*, 36 F.3d at 436. As substantial evidence supports the ALJ's

decision, it must be affirmed.

## CONCLUSION

It is therefore ORDERED that the decision of the Commissioner be, and it is hereby,

AFFIRMED.

SIGNED and ENTERED this _31st_ day of March, 2016.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE